No. 87-472

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

WILLIAM KOPPEN and KIMBERLY KOPPEN,
Individually; and WILLIAM KOPPEN, as
Personal Representative of the Estate
of CALLY JANE KOPPEN, Deceased; and
ALAN R. BUCK and SUSAN K. BUCK,
Individually; and ALAN R. BUCK, as
Personal Representative of the Estate
of MELISA SUE BUCK, Deceased,

Plaintiffs and Appellants,

-vs-

BOARD OF MEDICAL EXAMINERS and STATE
OF MONTANA,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Trieweiler Law Firm; Terry N. Trieweiler argued,
Whitefish, Montana

For Respondent:

Harrison, Loendorf & Poston; John Poston and Stephen
McCue argued, Helena, Montana
John H. Maynard, Dept. of Administration, Helena,
Montana

Submitted: April 28, 1988
Decided: August 11, 1988

Filed: AUG 11 1988

*[signature]*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiffs William and Kimberly Koppen (Koppens) and Alan and Susan Buck (Bucks) appeal from the order of the District Court of the Eleventh Judicial District, Flathead County, dismissing their complaint against defendants Board of Medical Examiners (Board) and State of Montana. We affirm.

The appellants present one issue on appeal:

"Does Section 2-9-112, M.C.A., which provides for judicial immunity, extend to executive agencies, such as the Montana Board of Medical Examiners, for negligent failure to perform their statutory duties?"

Plaintiffs Kimberly Koppen and Susan Buck both became pregnant during the summer of 1983 and contracted with Dr. David V. Kauffman for assistance with the delivery of their babies, expected during March of 1984. The baby born to the Koppens died after a short period of survival. The baby born to the Bucks died at the age of 8½ months.

The Koppens and the Bucks filed suit against the Board and the State on February 18, 1987, alleging the Board was negligent in failing to limit or revoke Dr. Kaufman's license to practice medicine, or otherwise prevent him from practicing obstetrics. According to the complaint, the Board had received complaints about Dr. Kaufman's fitness to practice medicine but failed to respond to them. The complaint characterized this as a failure by the Board to discharge its duty under § 37-3-202, MCA, to ensure that all physicians licensed in Montana maintain standards of conduct in the greatest public interest. The complaint alleged that because of the Board's failure, Dr. Kauffman's treatment was below the level of care and skill required of physicians in

2

Montana, which caused avoidable complications in the two pregnancies and resulted in the deaths of both infants.

On April 1, 1987, the Board and the State filed a motion to dismiss based on the contention that the Board performs a quasi-judicial function, thereby entitling both defendants to absolute immunity from suit. The District Court granted the motion by its order of September 28, 1987, and thereafter entered judgment in favor of the Board and the State.

The rationale in the District Court's Order began by quoting portions of § 2-9-112, MCA:

> (1) The State and other governmental units are immune from suit for acts or omissions of the judiciary.
> (2) ...
> (3) The Judiciary includes those courts established in accordance with Article VII of the Constitution of the State of Montana.

The court pointed out that the term "includes" in subparagraph 3 of the statute is not a "limiting term." According to the court, if the legislature had wanted to limit the immunity, it could have drafted the provision to mean specifically only those courts established under Article VII. Because the word used was "includes," the court determined that the legislature's grant of immunity extended to administrative agencies exercising "quasi-judicial" authority.

The court cited Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894 (1978), as stating the correct rationale for quasi-judicial immunity. In Butz, the U.S. Supreme Court began its analysis of quasi-judicial immunity by stating the rationale for judicial immunity:

> [C]ontroversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek

3

another, charging the participants in the first with unconstitutional animus. [citation omitted.] Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.

Butz, 98 S.Ct. at 2913. The court then examined the nature of administrative proceedings and the controversies involved, and concluded:

We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.

Butz, 98 S.Ct. at 2914. In this case, the District Court applied the rule in Butz to the Board, a state administrative agency, and concluded that the Board's adjudicatory function would warrant quasi-judicial immunity, which the court found to be afforded by § 2-9-112, MCA.

The appellants argue that the District Court's reading of § 2-9-112, MCA, is too liberal. Appellants' brief outlines general rules of statutory construction stating that any statute in derogation of rights otherwise guaranteed by a constitution must be strictly construed. The right involved in this case, according to appellants, is the right to sue state government entities in tort, which they assert is conferred by Article II, Section 18 of the Montana Constitution:

The state, counties, cities, towns, and all other local governmental entities, shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

Appellants argue that the grant of judicial immunity in § 2-9-112, MCA, is in derogation of this right, and must

4

therefore be construed strictly. The brief notes that the Board is an executive agency created pursuant to Art. VI of the constitution rather than Art. VII, which in appellants' view places the Board outside the scope of the judicial immunity found in § 2-9-112, MCA. The conclusion drawn from this by appellants is that they have the right to sue the Board and the State for negligence, and the District Court was in error when it dismissed their suit.

The decision of the District Court was rendered on a motion to dismiss. The judge sat without a jury, no testimony was taken and the facts are relatively uncontested. In cases such as this, our scope of review is much broader, and we are free to make our own examination of the entire case and make a determination in accordance with our findings. Shimsky v. Valley Credit Union (1984), 208 Mont. 186, 189-90, 676 P.2d 1308, 1310. However, we will affirm the result reached by the District Court if it is correct, even if the reasons given for that result are incorrect. Shimsky, 676 P.2d at 1310.

The District Court was correct in concluding that the Board is entitled to quasi-judicial immunity from suit. However, we do not need to read § 2-9-112, MCA, as providing for quasi-judicial immunity. The Board's quasi-judicial immunity is derived from the common law, which we hold to be controlling here.

Article II, Section 18 of the Montana Constitution abolished sovereign immunity in Montana. The Bill of Rights Committee of the 1972 Constitutional Convention stated in its Comments accompanying the proposed text of Section 18 that its purpose was to abolish "the archaic doctrine of sovereign immunity." 2 Mt. Leg. Council, Montana Constitutional Convention, 1971-72, 637. In reporting Section 18 to the full convention for approval, Delegate Murray of the Bill of Rights Committee stated, "We feel that the doctrine of

5

sovereign immunity, which we are attempting to do away with by this particular provision, really means that the king can do whatever he wants but he doesn't have to pay for it; and we'd like to do away with that doctrine." 5 Mt. Leg. Council, Montana Constitutional Convention, 1971-72, 1760. This Court duly recognized the demise of sovereign immunity when the question first came before us in Noll v. City of Bozeman (1975), 166 Mont. 504, 534 P.2d 880.

However, sovereign immunity is not at issue here. We are instead dealing with the doctrine of quasi-judicial immunity. As we have previously held, there were and are immunities separate and distinct from sovereign immunity, unaffected by the language of Art. II, Sec. 18. As a particularly relevant example, in State ex rel. Dept. of Justice v. District Court (1977), 172 Mont. 88, 560 P.2d 1328, and more recently in Ronek v. Gallatin County (Mont. 1987), 740 P.2d 1115, 44 St.Rep. 1275, this Court held that Art. II, Sec. 18 did not abolish the common-law doctrine of prosecutorial immunity.

As with prosecutorial immunity, quasi-judicial immunity is not a subject of Montana statutory law. Section 1-1-108, MCA, provides where the law is not declared by statute, the common law shall be the rule of a decision. The common law rule of quasi-judicial immunity was reviewed by the U.S. Supreme Court in the Butz decision, which in turn was cited by the District Court. The opinion in Butz squarely addressed the issue raised by appellants that executive officials or agencies are not judicial bodies and should not be immunized as such. Expanding on its statement quoted above that administrative adjudications have enough in common with judicial process to warrant immunity, the U.S. Supreme Court said,

> Judges have absolute immunity not because of their
> particular location within the Government but

6

because of the special nature of their responsibilities. This point is underlined by the fact that prosecutors--themselves members of the Executive Branch--are also absolutely immune.

. . .

We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.

. . .

The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete.

Butz, 98 S.Ct. at 2913, 2915. The Butz court thus characterized quasi-judicial immunity as the logical descendant of prosecutorial immunity, which this Court recognized in Dept. of Justice and Ronek. Both are founded upon the nature of the functions carried out by agencies or officials. See Ronek, 740 P.2d at 1116.

The discretion vested in the Board to weigh the information relative to Dr. Kauffman rendered it a quasi-judicial body. This is also evident from the statutes dictating the procedures to be followed. The Board cannot revoke or suspend a license to practice medicine without giving notice and opportunity for hearing, a hearing at which the doctor concerned may be represented by counsel and offer evidence. Section 37-3-323, MCA. Such a hearing is governed by the Montana Administrative Procedure Act, and the decision reached is subject to judicial review. Sections 2-4-702 and 2-4-631, MCA. The task performed by the Board thus comes

7

within the statutory definition of "quasi-judicial function" found at § 2-15-102(10), MCA.

The action or inaction by the Board under attack in this case is its decision not to strip Dr. Kauffman of his license when faced with complaints concerning his professional conduct. The Board's decision whether to initiate administrative proceedings against a doctor is analogous to a prosecutor's decision whether to initiate court proceedings against an alleged criminal. We concur with the reasoning in Butz that the Board's discretion might be distorted if it is not immune from suit for damages arising from such a decision. We hold, therefore, that in the exercise of its quasi-judicial authority, the Board is entitled to the absolute immunity afforded executive officials under the rule in the Butz decision. We also hold that the quasi-judicial immunity afforded the Board must encompass the State. The Board's discretion would be equally subject to distortion by considerations of possible litigation against the State arising from its actions. See Ronek, 740 P.2d at 1116-17; Dept. of Justice, 560 P.2d at 1330.

The opinions in Ronek, Dept. of Justice and Butz stand for the proposition that entities called upon to function judicially should be immunized in order to facilitate the proper execution of their duties. However, the basis for these decisions, as discussed above, is the common law.
We affirm the decision of the District Court.

_____
                        Justice

We Concur:

_____
Chief Justice

8

_John Conway Harrison_

_R. G. Paulbrandson_

_____
Justices

Mr. Justice John C. Sheehy, concurring in part and dissenting in part:

I concur with the result in this case. The complaint in this case should have been dismissed by the District Court, not for the reasons utilized by the District Court in assuming that quasi judicial functions of state boards were encompassed in statutory judicial immunity, but rather that the complaint fails to show that the unfortunate deaths and resulting damages to the plaintiffs were proximately caused by the State of Montana, through its Board of Medical Examiners.

The inaction of the Board of Examiners in failing to lift the license of Dr. Kauffman because of complaints made about him cannot be equated as a proximate cause with the direct acts of Dr. Kauffman in attending to the pregnant mothers, which, as the complaint alleges, were the proximate cause of their injuries. The theory of plaintiff's counsel to establish liability on the part of the state has too many "ifs"--if the Board had initiated proceedings against the doctor to lift his license to practice medicine; if the subsequent hearing and proceedings against the doctor unqualifiedly showed his incompetence to practice; if the evidence generated under the complaints against him stood up to show such incompetence; if the proceedings against the doctor would withstand judicial review. In my view, proximate cause cannot be attenuated to that extent.

Thus, the District Court properly granted a motion to dismiss the complaint, but not upon the grounds utilized by the District Court--that of judicial immunity, but rather because of lack of proximate cause.

Nonetheless, I cannot agree with the majority of this Court that the state as an entity is free from liability here on some ground of official immunity applying to government agents. I eschew especially the notion that the discretion of the Board of Examiners would be "equally subject to distortion by consideration of possible litigation against the State arising from its actions." That reason for immunity has been expressly waived by this state in its constitution and in its statutes.

The first factor to remember here is that the State of Montana in its governmental capacity is the defendant in this case, for acting through its governmental arm, the Board of Medical Examiners. The persons who are members of the Board are not defendants. No question is presented in this case that relates to the personal liability of the Board members who allegedly failed to act to lift Dr. Kauffman's license. When there is no risk of personal liability for damages to the government officials involved, the reason for common law official liability evaporates. When the reason for a rule ceases, so should the rule itself. Section 1-3-201, MCA.

It is from the viewpoint of the personal liability of governmental agents that Butz v. Economou (1978), 438 U.S. 478, at 480, 98 S.Ct. 2894, at 2897, 57 L.Ed.2d 895, at 899, should be examined. The first sentence of that opinion begins:

> This case concerns the personal immunity of federal officials in the Executive Branch from claims for damages arising from their violations of citizens' constitutional rights . . .

The vicarious liability of the United States government for its agents was not involved in Butz. The federal government may not be sued to redress the wrongs of its agents unless the government has specifically waived its

immunity from suit as for example, in the Federal Tort Claims Act, where it applies.

Moreover, the majority draw more fulsomely on the opinion in Butz than the opinion itself warrants. In discussing the functions of agency officials analogous to those of a prosecutor in deciding whether to initiate administrative proceedings against an individual, the court saw little chance of personal liability arising out of inaction. The Butz opinion states:

> The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete. (Citing authority.) While there is not likely to be anyone willing and legally able to seek damages from the officials if they do not authorize the administrative proceeding (refering to authority), there is serious danger that the decision to authorize proceedings will provoke a retaliatory response . . . (Emphasis in original.)

438 U.S. at 515, 98 S.Ct. at 2915, 57 L.Ed.2d at 921-922.

The point is, however, that the Butz court was deciding the personal liability of the government agents involved. That is not true in this case where the state alone is the defendant.

The purpose of common law official immunity is to allow government officials to be

> Free to exercise their duties unembarrassed by the fear of damage suits in respect to acts done in the course of those duties--suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous and effective administration of policies of government.

Davis v. Knud-Hansen Memorial Hospital (3d Cir. 1980), 635 F.2d 179, 186, 203 n. 20 quoting from Ferri v. Ackerman (1979), 444 U.S. 193, 100 S.Ct. 402, 409, 62 L.Ed.2d 355,

- 12 -

363. The threat of personal liability was enough to lead Judge Learned Hand to come down in favor of official immunity in balancing between eliminating the constant dread of retaliation for their discretionary functions and the rights of the injured from dishonest official acts. Judge Hand said that unless immunity was granted, it would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Gregoire v. Biddle (9th Cir. 1949), 177 F.2d 579, 581.

The State of Montana, through its 1972 Constitution, and by statutes enacted under its Constitution, has removed the reasons for common law immunity for state governmental agents. The public policy of Montana is that the state itself is subject to suit for the torts of its officials and employees. The statutes enacted by the legislature have immunized governmental agents from any personal liabilitys for damages, including court costs and attorney fees, arising out of the governmental torts. The State Constitution provides in Art. II, § 18, as follows:

> State subject to suit. The state, counties, cities, towns and all local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature. (Emphasis added.)

The statutes of this state declare our public policy that public officers and employees such as the individual members of the Board of Medical Examiners shall be immunized, defended and indemnified when civilly sued for their actions taken within the course and scope of their employment. Section 2-9-305(1), MCA. The term "employee" means an officer or employee, an elected or appointed official and persons acting on behalf of a governmental entity in any official capacity. Section 2-9-101(2), MCA. When such

- 13 -

government officials or employees are acting within the course and scope of their duties, they may require the state to defend a noncriminal action against them, may require indemnification for any money judgment or legal expenses, including attorney fees and costs, and any recovery against the governmental entity is a complete bar to any further action for recovery of damages by claimants against the officers or employees. Sections 2-9-305(2), -(3), -(4), and -(5), MCA.

Thus, under our constitutional and statutory scheme, the public policy of this state to remove all possibility of personal damages against governmental officials for their torts in office serves to eliminate the need for any application of common law official immunity in the case at bar. Apparently the plaintiffs recognize this, because they sue only the State of Montana and not the individual members of the Board of Examiners in their personal capacities. Thus, the liability of the state here should be decided on principles other than cases applying only to personal liability. Here, the state, by constitution and by statute, is not immune from suit. The state is liable to persons who suffer injuries proximately caused by state governmental torts as a matter of public policy and as a constitutional right.

It is, therefore, quite illogical for the majority to hold that the state is exempt from suit in this case because of the possibility that the Board's discretion would be subject to distortion by considerations of possible litigation against the state arising from the actions of the Board of Medical Examiners. The state, without question, has accepted that risk in assuming liability, and in subjecting itself to suit.

State immunity from suit, arising from the alleged torts of its agents should not be an issue in this case at all. That issue is removed by the public policy of this state. The only question we should decide here is whether the complaint, on well-settled tort rules can survive a motion to dismiss. As I said earlier, proximate cause is missing.

_____
Justice

Mr. Justice William E. Hunt, Sr., joins in the foregoing concurrence and dissent of Mr. Justice John C. Sheehy.

_____
Justice