No. 89-259/89-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA, ex el., DIVISION OF
WORKERS' COMPENSATION,
              Relator,
      -v-
DISTRICT COURT OF THE THIRTEENTH JUDICIAL
DISTRICT, and HONORABLE ROBERT W. HOLMSTROM,
District Judge,
              Respondents.

NATHANIAL B. BLAYLOCK, et al.,
              Plaintiffs/Appellants,
      and
DAVID L. CALDWELL,
              Plaintiff/Appellant,
      -v-
THE DIVISION OF WORKERS' COMPENSATION,
THE DEPARTMENT OF LABOR AND INDUSTRY,
and THE STATE OF MONTANA,
              Defendants/Respondents.

FI' ED

OCT 22 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Original Proceeding, Supervisory Control (89-259)

                District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Robert W. Holmstrom, Judge presiding.
                (89-298)

COUNSEL OF RECORD:

        For Appellant Class:

              Robert C. Kelleher, Sr. and Lee R. Kerr; Kelleher
              Law Offices; Billings, Montana

        For Appellant Caldwell:

              Timothy J. Whalen; Whalen & Whalen; Billings,
              Montana

        For Respondent and Relator:

              John H. Maynard, Tort Claims Division; Helena,
              Montana
              Chris D. Tweeten; Hughes, Kellner, Sullivan & Alke;
              Helena, Montana

Submitted: June 28, 1990

Decided: October 22, 1990

Filed:

_____
            Clerk

Justice R.C. McDonough delivered the Opinion of the Court.

This is an original proceeding of supervisory control consolidated with an appeal from a summary judgment entered in favor of the defendants by the District Court for the Thirteenth Judicial District, Yellowstone County, on the grounds that the defendants are entitled to quasi-judicial immunity. The District Court also ruled that the 42 U.S.C. § 1983 claims of unnamed plaintiffs in this class action suit are not barred by a federal court dismissal of these claims under the doctrine of res judicata. We reverse the District Court's order and remand the case for further proceedings. The following issues are the subject of this appeal:

(1) Is the State of Montana and its Division of Workers' Compensation protected by quasi-judicial immunity for their negligence in renewing the privilege of an employer to self-insure its workers' compensation risk without requiring the self-insuring employer to post security to guarantee payment of benefits?

(2) Does 42 U.S.C. §1983 provide a remedy under the due process clause for gross negligence?

(3) Does the doctrine of res judicata act to bar named plaintiffs in the federal action from bringing their §1983 action in the state courts?

The cause of action arises from the bankruptcy of Great Western Sugar Co. (GW), a Delaware corporation. GW employed

2

Montana workers in its sugar beet processing factory near Billings, and self-insured its Workers' Compensation risk under Plan I of the Montana Workers' Compensation Act, § 39-71-2101, MCA, et seq. (1985).

From 1981 to 1985, Andrew Kiely and James Murphy were the Division of Workers' Compensation (Division) employees who approved Plan I self-insurance applications. Plaintiffs' claim that Kiely and Murphy failed to act on GW's 1984 application for renewal. Plaintiffs further allege that GW officials were well aware GW was losing its solvency and yet failed to provide the security required by § 39-71-2106, MCA (1985). In early 1985, GW filed a petition for bankruptcy. Plaintiffs allege that prior to the filing, GW failed to make timely payment of benefits due claimants under the Workers' Compensation Act, and that GW ceased making any such payments after the bankruptcy filing. In their answer, the defendants admit that they were negligent in failing to conduct an adequate review of GW's financial condition in 1984, but deny that their negligence proximately caused the loss of plaintiffs' benefits. The suit was consolidated into a class action, the plaintiff class consisting of those former employees of GW who lost workers' compensation benefits as a result of GW's bankruptcy.

The procedural history of this case is extensive. It began in the United States District Court for the District of Montana, Billings Division, where plaintiffs' § 1983 claims were dismissed. Plaintiffs' appeal to the Ninth Circuit was affirmed. It is now before this Court on appeal from a final judgment entered in the

3

District Court for the Thirteenth Judicial District, Yellowstone County, pursuant to Rule 54(b), M.R.Civ.P. The District Court dismissed the state law claims of all members of the plaintiff class solely on the grounds of quasi-judicial immunity and our decision in Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, and also dismissed the claims under 42 U.S.C. § 1983 of the ten members of the plaintiff class who were named as plaintiffs in the earlier federal case as being res judicata. It further held that the Fifth Amended Complaint states a claim for relief under 42 U.S.C. § 1983. The defendants moved for reconsideration of that portion of the Court's order denying summary judgment as to the unnamed members of the federal plaintiff class, arguing that as a matter of federal law in the federal action, dismissal barred all potential plaintiffs despite the federal court's failure to certify the case as a class action. The District Court held that there is no privity existing between the two groups of plaintiffs and therefore unnamed plaintiffs are not barred by the res judicata effect of the federal decision.

This portion of the appeal is now before us pursuant to a writ of supervisory control issued August 30, 1989 accepting jurisdiction to determine whether the court below erred in refusing to dismiss the § 1983 claims of the remaining members of the plaintiff class who were not named plaintiffs in the federal action. The plaintiffs appealed the District Court's grant of summary judgment. The defendants' writ and plaintiffs' appeal were thereafter consolidated for oral argument.

4

## I. Quasi-judicial Immunity

First, we will address the issue of whether the State and the Division are protected by quasi-judicial immunity for their admitted negligence in renewing the privilege of an employer to self-insure its workers' compensation risk without requiring the self-insuring employer to post security to guarantee payment of benefits. Our determination will actually be considerably narrower than the issue presented to us and in addition does not reach any consideration of causation. Central to this determination is the nature of the functions to be performed by the Division in this case. For immunity to apply the function of the Division must be quasi-judicial rather than administrative or ministerial. Our review of past cases points out that the distinction between these functions is anything but clear:

> Experience teaches that few, if any, ministerial officers are not called upon to exercise some judgment or discretion in the performance of their official duties.
> . . .
> As distinguishing between acts quasi-judicial and acts ministerial in their character, the following definitions we think correctly state the law: "Quasi-judicial functions are those which lie midway between the judicial and ministerial ones. The lines separating them from such . . . are necessarily indistinct; but, in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial. . . .
> "A ministerial act may perhaps be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act done. . . .
> ". . . In the same line, a ministerial act has also been defined as an act performed in a prescribed legal manner, in obedience to the law or the mandate of legal

5

authority, without regard to, or the exercise of, the judgment of the individual upon the propriety of the acts being done. . . ." [Citations omitted.]

State ex rel. Lee v. Montana Livestock Sanitary Board (1959), 135 Mont. 202, 206, 339 P.2d 487, 489-490. In granting the defendants summary judgment, the District Court relied on this Court's decision in Koppen, where we held that the Board of Medical Examiners was immune from suit for allegedly failing to respond to complaints about a doctor's fitness to practice medicine and to limit or revoke his license to practice medicine under the common-law theory of quasi-judicial immunity. In Koppen we pointed to the discretion of the Board to weigh information, the fact that it could not revoke or suspend a licence without giving notice and an opportunity for hearing, that such a hearing would be governed by the Montana Administrative Procedure Act and that the decision reached would be subject to judicial review, as factors in determining that the acts performed by the Board came within the statutory definition of "quasi-judicial function" found at § 2-15-102(10), MCA:

"Quasi-judicial function" means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. . . . (Emphasis added.)

Section 2-15-102(10), MCA. See Koppen, 759 P.2d at 176.

The case before us is distinguishable from Koppen. In Koppen, the Board allegedly failed to respond to complaints, adversarial in nature, that it received regarding a physician's fitness to practice medicine and to take remedial action. Koppen, 759 P.2d

6

at 174. We noted that the action or inaction by the Board in Koppen was *its decision* not to revoke or limit the physician's licence or initiate such action *when faced with complaints concerning his professional conduct*. Koppen, 759 P.2d at 176. There was no allegation that the Board failed to even consider the complaints.

Here, we first note that there is no controversy from the outset as in Koppen. The facts merely involve the filing of an application rather than an adversarial setting involving a dispute or controversy. We conclude that immunity does not attach because the Division is not expressly designated a quasi-judicial board, see § 2-15-124, MCA, see generally Title 2, Chapter 15, MCA, nor was it performing a quasi-judicial function as will be discussed below. The following statutes are relevant to our determination of the nature of the Division's function in this case:

§39-71-2101 (1985): Requires Plan I employers to *furnish satisfactory proof* to the division of their solvency and financial ability to pay the compensation and benefits in this chapter. . .

§39-71-2102 (1985): Employer "shall file proof of his solvency within the time and in the form as may be prescribed by the rules or orders of the division."

§39-71-2104 (1985): Every Plan I employer "shall, at least 30 days before the expiration of each fiscal year, *renew his application* to be permitted to continue to make such payments as aforesaid directly to his employees for the next ensuing fiscal year . . . "

§39-71-2106 (1985): "The division *may* require any employer who elects to be bound by compensation Plan I to provide a security deposit. . . . The division is *liable* for the value and safekeeping of all such deposits or securities and shall, at any time, upon demand of a bondsman or the depositor, account for the same and the

7

earnings thereof."

§39-71-2108 (1985): "Upon the failure of the employer to pay any compensation provided for in this chapter upon the terms and in the amounts and at the times when the same becomes due and payable, the division shall, upon demand of the person to whom compensation is due, apply any deposits made with the division to the payment of the same, and the division shall take the proper steps to convert any securities on deposit with the division or sufficient thereof into cash and to pay the same upon the liabilities of the employer accruing under the terms of this chapter, and the division shall, when necessary, collect and enforce the collection of the liability of all sureties upon any bonds which may be given by the employer to insure the payment of his liability. . . ." (Emphasis added.)

The following administrative rules, corresponding to these statutes, are also pertinent to our determination:

24.29.702 ELECTION TO BE BOUND BY COMPENSATION PLAN NO. 1 -- ELIGIBILITY (1) Any employer . . . may elect to be bound as a self-insurer under plan no. 1, if in accordance with 39-71-2102, MCA, the employer . . . submits, on forms provided by the division, satisfactory proof of solvency and financial ability to pay . . . and if, in accordance with 39-71-2103, MCA, the division finds the employer . . . to have the necessary finances. . . .

24.29.702A SOLVENCY AND ABILITY TO PAY (1) Proof of solvency and financial ability to pay compensation, benefits and liabilities is required. Employers . . . must demonstrate financial stability by providing audited financial statements that upon analysis indicate sufficient security, as determined by the division, to protect the interests of injured workers. These shall consist of analysis of financial conditions, current and historical, including, but not limited to, the following factors: quick ratio, current ratio, current liabilities to net worth, current liabilities to inventory, total liabilities to net worth, fixed assets to net worth, collection period, inventory turnover, assets to sales, sales to net working capital, accounts payable to sales, return on sales, return on assets, return on net worth, contingent liabilities, comparison to industry standards, income from ongoing operations and corporate bond rating. Only an employer . . . meeting financial standards acceptable to the division shall be granted permission

to be bound as a plan no. 1 self-insurer. . . .

     24.29.702B  WHEN SECURITY REQUIRED   (1)  Security must be deposited with the division by the employer . . . on order of the division under the following conditions:
     (a)  Every employer . . . must deposit security with the division.  The deposit requirement may be waived in whole or in part by the division for individual employers . . . only who provide substantive evidence that the full amount of the deposit is not needed.  This evidence shall consider criteria for solvency and ability to pay as set forth in ARM 24.29.702A.
     (b)  The employer . . . no longer has the solvency or ability to pay compensation, benefits, and liabilities as determined under standards applied in ARM 24.29.702A.
     (c)  The employer . . . does not have sufficient securities on deposit with the division under section 39-71-2107, MCA, to meet current liabilities, in addition to all other liabilities. . . .

24.29.702 ARM.  The statutory scheme for approval of plan no. 1 insurers further distinguishes this case from Koppen.  The statutes governing the Board of Medical Examiners provide that "the board may make an investigation whenever it is brought to its attention that there is reason to suspect" that a particular doctor is unfit to practice medicine or is guilty of unprofessional conduct.  See §§ 37-3-323 and 37-3-322, MCA.  Here, the statutory scheme mandates that the Division at least review a self-insurer's financial condition.  Admittedly the statutes and administrative rules grant the Division discretion in renewing GW's application as a plan No. 1 self-insurer.  However, in this case the Division never exercised this discretion to determine GW's eligibility to self-insure its risk under plan no. 1.  Rather, there was an admitted complete failure by the Division to undertake any of the review necessary to make such a determination. Thus, the negligence occurred at a

9

stage where the Division's function was entirely ministerial:

> Official action, the result of performing a certain specific duty arising from designated facts, is a ministerial act. . . . Another way of expressing the same thought is that a duty is to be regarded as ministerial when it is a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated; the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion. . . . And that a necessity may exist for the ascertainment, from personal knowledge or from information derived from other sources, of those facts or conditions, upon the existence or fulfillment of which, the performance of the act becomes a clear and specific duty, <u>does not operate to convert the act into one judicial in its nature</u>. (Emphasis added.)

Meinecke v. McFarland (1949), 122 Mont. 515, 522, 206 P.2d 1012, 1015. [Citations omitted.] The discretion afforded by the statutes and rules in this case was never exercised, rather, the Division breached its underlying duty, mandated by the statutory scheme for plan no. 1 insurance, to investigate GW's eligibility to self-insure. Such act was purely ministerial, <u>Meinecke</u>, <u>supra</u>, and cannot be a basis for invoking quasi-judicial immunity:

> Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision. . . .

Johnson v. State (1968), 73 Cal.Rptr. 240, 249, n. 8, 447 P.2d 352, 361, n. 8.

While our analysis here is limited to common-law quasi-judicial immunity, the "exercise of judgment and discretion" required by § 2-15-102(10), MCA, to invoke such immunity is

10

analogous to the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. §2680(a). Under this exception the FTCA does not waive the immunity of the United States for claims based upon negligence of government employees exercising or performing discretionary functions on the part of a federal agency, regardless of whether the discretion is abused. 28 U.S.C. §2680(a); see Dalehite v. United States (1953), 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; United States v. Varig Airlines (1984), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660. While suits cannot be maintained against the United States for acts falling under this exception, such acts must involve the "permissible exercise of policy discretion":

> [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect. (Emphasis added.)

Berkovitz v. United States (1988), 486 U.S. 531, 536, 108 S.Ct. 1945, 1958, 1959, 100 L.Ed.2d 531, 540-541. The facts in Berkovitz are similar to the facts here. In Berkovitz the plaintiff alleged that the National Institutes of Health's Division of Biologic Standards (DBS) negligently failed to require certain tests prior to issuing a manufacturer's license to produce a polio vaccine. Prior to issuing a product license, statutory and regulatory provisions required DBS to receive all data the manufacturer was required to submit regarding the product, to examine the product,

11

and to make a determination that the product complies with safety standards. <u>Berkovitz</u>, 436 U.S. at 542. The plaintiff alleged that DBS decided to issue a license without having first received the required test data, thus immunity did not bar his claims:

> Rather, the claim charges a failure on the part of the agency to perform its clear duty under federal law. When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply.

<u>Berkovitz</u>, 486 U.S. at 544. For similar reasons, the immunity we recognized in <u>Koppen</u> is inapplicable in this case. In <u>Koppen</u>, the Board exercised a quasi-judicial function in deciding not to take action in the face of adversarial complaints against a doctor. Here, there was no discretion exercised by the Division regarding renewal or non-renewal of GW's status; rather, there was a complete failure at the administrative level to conduct the necessary preliminary review of GW's financial condition that would enable the Division to make a decision to not renew. The duties imposed by the statutory scheme on the Division's employee were purely investigative, ministerial and administrative. Because the Division failed to perform its duty to review or examine GW's application as prescribed by statute, and because simply performing this duty does not involve the use of quasi-judicial discretion, the Division is not protected by quasi-judicial immunity at this stage. The Division has simply not functioned as such under these facts.

## II. § 1983 Claims

Plaintiff's constitutional claims are based on 42 U.S.C. §

12

1983, which provides:

### § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

With respect to defendants' appeal regarding the effect of res judicata on plaintiffs' claims under 42 U.S.C. § 1983 and whether this section provides a remedy under the due process clause for gross negligence, we note that it is now settled that states and their agents are not "persons" for the purposes of § 1983:

. . . it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not, Monell, 436 U.S., at 690, n. 54, 98 S.Ct., at 2035, n. 54, and we consequently limited our holding in Monell "to local government units which are not considered part of the State for Eleventh Amendment purposes," ibid. Conversely, our holding here does not cast any doubt on Monell, and applies only to States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes. . . .
. . . .
Obviously state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. . . . [citations omitted]
We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. . . .

Will v. Michigan Department of State Police (1989), 109 S.Ct. 2304, 2311-2312, 105 L.Ed.2d 45. The plaintiffs have no § 1983 claim

against the defendants in this case.

There being no quasi-judicial immunity afforded to the Division and there being no valid claims under 42 U.S.C. § 1983, the case is remanded for further proceedings on the plaintiffs' remaining claims.

**REVERSED AND REMANDED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Justice John C. Sheehy, specially concurring:

I concur with the result in this case, but not for the reasons assigned by the majority. The state argues that it is immune here because its agents were engaged in quasi-judicial functions, i.e., issuing, suspending or revoking licenses, permits and certificates, and evaluating and passing on facts. These functions are statutorily designated as quasi-judicial. Section 2-15-102(10), MCA. The state had a reasonable expectation that Koppen would control this case, since Koppen had insulated from suit the State Board of Medical Examiners on a theory of quasi-judicial immunity. Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173.

A correct result based on legal principles should see the majority backing off completely from any immunity attributed to ministerial quasi-judicial acts or non-acts of state public officials. Then this Court would be applying the true public policy of this state, that the state is not immune from suit for the torts of its agents except where the legislature has specifically provided by law by a 2/3 vote of each house of the legislature. Art. II, § 18, Montana State Constitution.

The legislature has acted to provide judicial immunity, distinguished from quasi-judicial immunity in § 2-9-112, MCA. That statute provides immunity for acts or omissions of the judiciary, and limits "judiciary" to courts established under Art. VII of the State Constitution. There is no statutory provision excepting quasi-judicial acts of agencies from responsibility in tort law.

15

That kind of immunity was gratuitously afforded by this Court in Koppen and not by act approved by 2/3's of each house of the legislature.

Because of Koppen, the majority, to achieve a proper result, are forced to distinguish between agencies deciding not to act (Koppen) and agencies simply not acting (this case). Thus, the majority hold an agency is still immune if it decides to do nothing, regardless of the merits of taking action, or the overwhelming duty of the agency to act. Yet, in this case, the inaction of the state employees to revoke or limit Great Western's status as a self-insurer was in itself a type of decision.

In Koppen, I concurred with the result not because exercising a quasi-judicial function merited immunity, but because the claim of the plaintiffs was too remote from state action or inaction to incur tort liability. It is easy to apply that logic here. In Koppen, the inaction of the state was not foreseeable as a proximate cause of the wrongs later committed by the doctor. In this case, the inaction of the state employee to assure the solvency of a self-insurer foreseeably caused the harm to the plaintiffs. The issuance by the state of a license to a medical doctor is not a guarantee that the doctor will not malpractice; but on the other hand, the failure of the state to rein in an insolvent self-insurer will certainly and foreseeably wreak damage on its injured employees.

Nonetheless, I welcome the result here, for whatever reason given by the majority. Slowly, oh slowly, this Court is inching

16

back from the harsh grants of state immunity in Peterson v. Great Falls School District (1989), 237 Mont. 376, 773 P.2d 316; Bieber v. Broadwater County (1988), 232 Mont. 487, 759 P.2d 145; State ex rel. Eccleston v. Third Judicial District Court (Mont. 1989), 783 P.2d 363, 46 St.Rep. 1929 and Miller v. Fallon County (Mont. 1989), 783 P.2d 419, 46 St.Rep. 2087.  See Mitchell v. University of Montana (Mont. 1989), 783 P.2d 1337, 46 St.Rep. 2109; Koch, et al. v. Yellowstone County (Mont. 1990), ___ P.2d ___, 47 St.Rep. 1312.

_____
                Justice

Justice William E. Hunt, Sr.:

I concur in the foregoing specially concurring opinion of Justice Sheehy.

_____
                Justice

Justice John C. Harrison:

I concur in the foregoing specially concurring opinion of Justice Sheehy.

_____
                Justice

Justice Fred J. Weber dissents as follows:

Great Western Sugar Company (GW) was a self insurer for workers' compensation purposes. GW became insolvent and unable to pay its liabilities. The majority opinion describes the unfortunate position of the plaintiff workers who had been unable to collect their workers' compensation benefits from GW. Having been unable to collect those benefits from GW, the plaintiffs have sued the Division of Workers' Compensation and the State of Montana. The State has admitted negligence through the Division of Workers' Compensation in failing to conduct an adequate review of GW's financial condition. The State does deny that such negligence was the cause of the loss of plaintiffs' benefits. The majority has concluded that the admitted failure to examine reports submitted by GW is negligence, that such failure was ministerial, and as a result the Division and State can be held responsible. I disagree with that conclusion.

I conclude that the majority has disregarded this Court's holding in Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173. I can find no meaningful distinction between the present case and Koppen. As a result I conclude that under the Koppen holding, there is quasi-judicial immunity so far as the Department and the State are concerned.

In his special concurrence, Justice Sheehy reached the same conclusion. He points out that the functions of the Department in this case come within those functions which are statutorily designated as quasi-judicial under § 2-50-102(10), MCA. I agree

18

with his analysis up to that point. I do not agree with his desire to overrule <u>Koppen</u>. I do conclude that there is no distinction between <u>Koppen</u> and the present case.

The majority attempts to distinguish <u>Koppen</u> by suggesting there was no dispute in the present case as there was in <u>Koppen</u>. The majority concludes that immunity does not attach because the Division was not expressly designated a quasi-judicial board nor was it performing a quasi-judicial function. The majority emphasizes that the Division never exercised any discretion because it just failed to undertake any review of the materials submitted to it. As a result the majority concludes that the negligent failure to review was ministerial. The key majority statement is the following:

> <u>Because the Division failed to perform its duty to review</u> or examine GW's application as prescribed by statute, and <u>because simply performing this duty does not involve the use of quasi-judicial discretion, the Division is not protected by quasi-judicial immunity</u> at this stage. The Division has simply not functioned as such under these facts. (Emphasis supplied.)

I do not believe that <u>Koppen</u> supports that view. In the opinion in <u>Koppen</u>, 233 Mont. at 215, 759 P.2d at 174, the majority stated:

> According to the complaint, the Board had received complaints about Dr. Kauffman's fitness to practice medicine <u>but failed to respond to them</u>. The complaint characterized this as a failure by the Board to discharge its duty under § 37-3-202, MCA. . . . (Emphasis added.)

The majority in <u>Koppen</u>, 233 Mont. at 217-18, 759 P.2d at 175, further stated:

> The District Court was correct in concluding that the Board is entitled to quasi-judicial immunity from suit. . . . The Board's quasi-judicial immunity is derived from the common law, which we hold to be

19

controlling here.

The Koppen majority, 233 Mont. at 219, 759 P.2d at 176, further stated with regard to the Board of Medical Examiners:

> The discretion vested in the Board to weigh the information relative to Dr. Kauffman rendered it a quasi-judicial body. This is also evident from the statutes dictating the procedures to be followed. . . . The task performed by the Board thus comes within the statutory definition of "quasi-judicial function" found at § 2-15-102(10), MCA. (Emphasis added.)

Following are the key holdings, for our purposes, of Koppen:

> The action or inaction by the Board under attack in this case is its decision not to strip Dr. Kauffman of his license when faced with complaints concerning his professional conduct. The Board's decision whether to initiate administrative proceedings against a doctor is analogous to a prosecutor's decision whether to initiate court proceedings against an alleged criminal. We concur with the reasoning in Butz that the Board's discretion might be distorted if it is not immune from suit for damages arising from such a decision. We hold, therefore, that in the exercise of its quasi-judicial authority, the Board is entitled to the absolute immunity afforded executive officials under the rule in the Butz decision. (Emphasis added.)

Koppen, 233 Mont. at 219, 759 P.2d at 176. In substance Koppen had contended that the Board of Medical Examiners had received complaints but failed to respond to them. That negligent failure to respond is directly comparable to the negligent failure to study the reports in the present case. I find no factual distinction between Koppen and the present case. In Koppen the Board of Medical Examiners failed to do anything. In the present case the Division failed to do anything. In both cases there was a failure to perform a mandated duty. If the majority opinion in this case is correct, then it seems that we have in effect overruled Koppen,

20

at least in part.

I disagree with the majority analysis which concludes that while the statutes and rules grant discretion to the Division in renewing GW's application, the Division never exercised the discretion to determine GW's eligibility to self insure. As a result the majority concluded that the complete failure by the Division to undertake _any_ review thus becomes ministerial. The majority concludes that the discretion afforded by the statutes and rules was never exercised and that such failure to exercise was purely ministerial. I do not believe that conclusion can be reached, based upon Koppen; and I also disagree with the fundamentals of that analysis.

In Koppen this Court pointed out that quasi-judicial immunity is comparable to prosecutorial immunity in that it is not based upon the statutes of Montana, but upon the common law. Koppen then referred to the common law of quasi-judicial immunity as set forth in the Butz United States Supreme Court decision. Koppen then quoted the following from Butz:

> Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities. This point is underlined by the fact that prosecutors--themselves members of the Executive Branch--are also absolutely immune.
>
> . . .
>
> We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. (Emphasis added.)

21

Koppen, 233 Mont. at 218-19, 759 P.2d at 176 (quoting Butz v. Economou (1978), 98 S.Ct. 2894, 2913, 2915). If the majority is correct in concluding that the failure to exercise discretion was purely ministerial, then apparently that rationale would apply to prosecutors as well. Under that rationale, a prosecutor could be sued for his negligent failure to initiate prosecution. I conclude that the failure to discharge a duty is not a ministerial act.

I conclude that the failure to respond to complaints on the part of the Board of Medical Examiners in Koppen is directly comparable to the failure on the part of the Division of Workers' Compensation to examine the materials filed with it by GW in the present case. I would therefore conclude that under Koppen we are required to hold there is quasi-judicial immunity as to the defendants named in this case.

_____
Justice

22