DISTRICT JUDGE SIMONTON
concurs and dissents.
¶79 I dissent from the Court’s decision on Issue 1, and concur with its decision on Issue 2.
¶80 I would affirm the decision of the District Court granting summary judgment to the State on the issue of quasi-judicial immunity.
¶81 Professional licensing statutes have two purposes: first, to protect the public; and second, to provide for the licensure of qualified professionals. The legislature’s intent is that appointed members of a board regulating a profession determine who is qualified to be licensed. In this case, the Board of Medical Examiners is responsible for that decision. The Board of Medical Examiners consists of eleven members appointed by the Governor with the consent of the Senate and must *230 include five members who have the degree of doctor of medicine; one member who has the degree of doctor of osteopathy; one member who is a licensed podiatrist; one member who is a licensed nutritionist; one member who is a licensed physician’s assistant; and two members of the general public. The law applicable at the time Dr. Stephenson applied for licensure allowed the Department of Labor and Industry, at the direction of the Board, to issue three forms of certificates of licensure including a restricted certificate and a temporary certificate. To be eligible for any one of the three licenses, an applicant must be of good moral character “as determined by the board”; be a graduate of an approved medical school; have completed an approved internship of at least one year; and be able to communicate in English. Section 37-3-305, MCA. Subsection 2 allows a conditional or probationary license to be issued even if the Board is aware of unprofessional conduct or the applicant is otherwise unqualified. Only later, in § 37-3-321, MCA, is there any reference to “refraining” from issuing a license and requiring a contested case hearing.
¶82 Under § 37-3-321, MCA, if the Board determines that an applicant is not eligible for licensure, it shall refrain from authorizing the Department to issue a license. In such an instance, the Board shall mail to the applicant notice of its decision together with notice of a hearing before the Board. “If the applicant without cause fails to appear at the hearing or if after hearing the board determines he is not entitled to a license, the board shall refuse to grant the license.” Section 37-3-321, MCA. The Court concludes that if a hearing occurs, a controversy then arises and quasi-judicial immunity would be a defense. ¶ 31. However, the Board, after interviews and an investigation did determine that Dr. Stephenson was eligible for a temporary, conditional license under the authority of § 37-3-305, MCA.
¶83 Admittedly, there was not a contested case hearing after the Board denied full licensure because under § 37-3-305(2), MCA, the Board authorized the Department to issue a license subject to conditions and limitations. It authorized the issuance of a temporary and restricted certificate after an investigation and two meetings between the applicant and the Board. Presumably, any information that could have been derived from a contested case hearing was gathered in a more informal manner at these meetings. The Board additionally made the applicant’s conditional license subject to peer review and interviews with other physicians. It required additional education. Even though Dr. Stephenson’s full licensure, which existed at the time of the alleged malpractice, was a process that took more *231 than three years, the Plaintiff claims that the Board’s considerations in 1995 and 1996 and its decision to issue a license are somehow causally related to any medical malpractice. I do not think it is necessary to reach the causation issue.
¶84 According to the Court and Plaintiff, the Board would be protected by quasi-judicial immunity if it had simply denied the license and issued a notice rather than conducting two interviews, an investigation, and other processes. If Dr. Stephenson then requested a hearing, one could have been held. If the Board had decided to issue the conditional temporary license, the defense of quasi-judicial immunity would be available. However, the Administrative Procedure Act allows for informal resolutions of contested cases, like the Board’s actions with Dr. Stephenson. Section 2-4-603, MCA. That is exactly what was done here.
¶85 I believe the controlling issue in this case is: Should a licensing board’s failure to strictly perform administrative tasks negate the defense of quasi-judicial immunity, which would otherwise be available to a Board making a licensing decision? I would answer the question in the negative. Unlike the Court, I believe such a result is supported by prior decisions. The division that currently exists between administrative/ministerial functions and quasi-judicial functions can be clarified.
¶86 In Koppen v. Board of Medical Examiners, 233 Mont. 214, 759 P.2d 173 (1988), this Court held that quasi-judicial immunity was a defense available to the Board of Medical Examiners despite its failure to take action on complaints about a doctor’s competence. The Court recognized the discretion vested in the Board to grant, revoke, or suspend licenses. It discussed the procedure that must be followed to revoke or suspend a license, including the necessity of a contested case hearing. Koppen, 233 Mont. at 219-20, 759 P.2d at 176. However, there was no contested case hearing in Koppen because the Board did nothing in response to the complaints. Whether that inaction was a conscious choice or the result of negligence does not appear significant to the Court. The inaction is treated as a quasi-judicial act protected from liability. I agree with the result in Koppen where the Court states:
The opinions in Ronek, Dept, of Justice and Butz stand for the proposition that entities called upon to function judicially should be immunized in order to facilitate the proper execution of their duties.
*232 Koppen, 233 Mont. at 220, 759 P.2d at 176. The decision to take no action was made by the Board and not by an agency or department employee.
¶87 The next decision in the line of cases on this subject is State v. District Court, 246 Mont. 225, 805 P.2d 1272 (1990) (Great Western Sugar). In Great Western Sugar, employees of the Division of Workers’ Compensation allowed an employer to self insure without requiring it to post security guaranteeing the availability of benefits. Employees of the Division of Workers’ Compensation failed to follow administrative duties to determine whether the employer was eligible to self insure. None of the review necessary to make the determination was followed. The Court held, and I agree, that no quasi-judicial decision making was involved. Great Western Sugar, 246 Mont. at 234, 805 P.2d at 1279. State employees had the responsibility to follow legislatively imposed duties to insure the availability of workers’ compensation benefits. No discretion was involved. Had the employees properly done their jobs, the employer’s eligibility to be self insured would have been obvious. And, as the Court notes in Great Western Sugar, 246 Mont. at 233, 805 P.2d at 1278, there was no policy decision that required the conscious balancing of risks and advantages, which is a prerequisite to quasi-judicial immunity.
¶88 In Newville v. State, Dept. of Family Services, 267 Mont. 237, 883 P.2d 793 (1994), employees of the Department of Family Services approved an application to be foster parents, apparently after only a cursory examination, and the child was subsequently seriously injured in the care of those foster parents. The Court said no quasi-judicial act was performed by the employees and therefore, immunity was not available. Iagree with the result and again note that ATeicciiie involved employees and not a Board. The employees’ acts were ministerial and not discretionary. The Department’s actions were not discretionary, but were mandated by statute and were ministerial and administrative in nature. Newville, 267 Mont. at 269, 883 P.2d at 812.
¶89 Finally, in Rahrer v. Bd. of Psychologists, 298 Mont. 28, 993 P.2d 680 (2000), this Court decided that the Board of Psychologists had quasi-judicial immunity in its pursuit of a complaint against a psychologist, its decision to investigate the complaint, and its decision to hold a contested case hearing. Rahrer, 298 Mont. at 33, 993 P.2d at 683. Clearly in Rahrer, the decision by the Board of Psychologists to pursue the complaint was protected even though the ultimate decision to dismiss the complaint was made by a hearings examiner.
*233 ¶90 The decision by the Court in this case is the first where a licensing board’s decision is not protected as a quasi-judicial act.
¶91 In considering whether acts are ministerial or quasi-judicial in nature, I would also look at who performs those acts. There is certainly a difference between the actions of an employee who is performing what is required by his job (generally ministerial and administrative) and the discretionary decisions made by a Board appointed for its expertise in the licensing of professionals. The legislature has recognized the expertise of Board members in making them responsible for the screening and selection of applicants for licensure and for the discipline of licensees who act unprofessionally. This Court should grant that same deference to licensing boards. It may help resolve some of the confusion the Court recognized in Great Western Sugar, 246 Mont. at 228-29, 805 P.2d at 1275.
¶92 In general, any licensing board authorized by the legislature may “grant or deny a license and, upon a finding of unprofessional conduct by an applicant or license holder, impose a sanction provided by this chapter.” Section 37-l-307(l)(e), MCA. Likewise, any Board which decides that a license applicant is unable to practice with reasonable skill and safety may restrict or limit the practice of the applicant, require completion of specific programs, monitor the practice, or establish conditions of probation for a designated period of time. Section 37-1-312(1), MCA. That statute, like § 2-4-603, MCA, also provides that the Board and a license applicant can enter into stipulated agreements to resolve disputes. The legislature recognized that not all applicants may initially be qualified for licensure and provided that the Board of Medical Examiners may hold hearings and establish programs to assist and rehabilitate those with mental or physical problems. Section 37-3-203, MCA. As previously stated, § 37-3-305(2), MCA, allows the Board to authorize the issuance of licenses subject to terms of probation, other conditions, or limitations that it sets. Once the Board receives an application, it may make an independent examination and can require whatever records and information it desires in determining whether the application should be granted. Section 37-3-309, MCA.
¶93 The Court seems to ignore the authority and discretion of the Board by relying on the language in § 37-3-321, MCA, which says the Board shall refrain from authorizing the issuance of a license if the Board determines that the applicant does not possess the qualifications or that he has committed unprofessional conduct. In deciding that the applicant in this case is guilty of unprofessional conduct and is not *234 qualified to practice, the Court, however, is substituting its judgment for that of the Board. Fact finding is the province of the Board, not this Court.
¶94 The Court notes that the Board did exercise its authority and duties in requesting additional information and in determining that Dr. Stephenson should appear before it for a personal interview. Dr. Stephenson was questioned about the disciplinary action in California. Having considered that, the Board tabled his application and requested even more information. The Board contacted Dr. Stephenson’s probation officer, three doctors who Dr. Stephenson had listed as references, and then held another personal interview with him. Only then did it authorize a temporary restricted license to Dr. Stephenson who was also given the option of declining it and then having a contested case hearing. Dr. Stephenson agreed to the conditions, and an informal resolution was reached. Only after peer reviews, additional education, and the passage of three years was Dr. Stephenson granted full licensure.
¶95 After defining ministerial functions as a duty imposed by law where actions are not discretionary but mandated by statute, the Court limits quasi-judicial acts subject to immunity only if they are discretionary in nature and in the context of a contested or adversarial type of proceeding. Quasi-judicial function is defined in § 2-15-102(10), MCA, as:
an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies.
It includes “issuing, suspending, or revoking licenses, permits, and certificates.” “Holding hearings” is only an example of a quasi-judicial function. Now the Court has limited the power of the Board to issue temporary or restricted licenses by requiring a contested case hearing before it will be protected by quasi-judicial immunity. In effect, the Court is saying the Board’s decision to issue a medical license becomes a quasi-judicial function only after a contested case hearing is held. But it is the Board’s initial inquiry or investigation and its discretionary weighing of facts, combined with its discretionary decision to grant or not grant a license that is the quasi-judicial function. In this instance, because the Board exercised its discretion to make its decision, it should be cloaked with the protection of quasi-judicial immunity.
¶96 The Court states that the process involved in this case was never adversarial. There is no requirement that the process be adversarial. *235 There is a requirement that there be a controversy and certainly the applicant’s request for full licensure and the Board’s denial of it created a controversy.
¶97 In my opinion, the Court has substituted its judgment for that of a specialized board composed of individuals best qualified to decide who should be licensed to practice medicine and under what conditions. The decision to refrain from licensing and then to allow it on a temporary restricted basis was certainly not just a ministerial act, but was an exercise of the Board’s discretion which should entitle it to quasi-judicial immunity.
¶98 While I dissent from the Court’s opinion on Issue 1,1 agree with the Court’s conclusion on Issue 2 that the judgment of the District Court must nevertheless be affirmed because the Board is insulated from liability on the basis of the public duty doctrine.
JUSTICES WARNER and RICE join in the foregoing dissent and concurrence.