JUSTICE WEBER,
dissenting:
The key facts upon which the majority concluded that the Board of Dentistry, does not enjoy quasi-judicial immunity as described in Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, are stated as follows:
“The prosecutor’s independence is checked by procedural safeguards inherent in the system, such as probable cause investigation, swearing under oath, etc. However, here we are not presented with a similar situation. The Board proceeded against Kandarian without any investigation of the allegations against him. It did not interview Kandarian himself. It released sensitive material to the press about a possible criminal action without notice to Kandarian. The Board was not bound by and did not adhere to a process that provided any safeguards for Kandarian. It therefore does not enjoy the immunity afforded the prosecutor.”
The essence of the foregoing holding appears to be that because the Board did not adhere to a process which provided safeguards for Kandarian, it had forfeited any immunity afforded a prosecutor, which apparently would also include the quasi-judicial immunity described in Koppen,
We do not have a controversy here which required a Board hearing in order to determine the contentions of the parties. Here a Kalispell dentist forwarded his letter to the Board of Dentistry complaining that Mr. Kandarian was engaged in the illegal practice of dentistry as appeared from the enclosed copy of an ad which showed Mr. Kandarian was advertising for dentures, partíais, realigns, fast repairs, and “TMJ evaluations.” That Kalispell dentist stated he had personal knowledge of Mr. Kandarian’s offer to treat patients for TMJ disorders. By letter dated September 22,1986, the Board of Dentistry furnished Mr. Kandarian a copy of the complaint as filed. The Board requested a response and asked that if facts had been misstated Mr. Kandarian should so state and refer to documents or witnesses. By letter dated October 31,1986, the attorney for the Board of Dentistry *452 again wrote to Mr. Kandarian with regard to the same complaint. In that letter the attorney pointed out that the complaint alleged unlicensed practice of dentistry and referred to the civil and criminal sanctions. It again asked Mr. Kandarian to advise if the fact allegations were incorrect. If he felt there was legal justification he should provide such information. It also invited Mr. Kandarian to stop the advertising and the attorney would then recommend the closing of the files. By letter dated November 6, 1986, addressed to the Board of Dentistry attorney, Mr. Kandarian clearly indicated his position and stated:
“In regards to your letter of October 31,1986,1 must confess to you that I didn’t think it necessary to answer a complaint of the dental board, when in fact it has nothing to do with me — nor me with it. If I have committed a crime, I will answer to the board of denturitry.
“I am not now, nor have I ever practiced dentistry! I am licensed as a denturist and practice as such. T.M.J. evaluations certainly fall within my scope of practice, regardless of what the board of dentistry thinks, and I will continue to practice accordingly.
“If the board of dentistry would tend to its own complaints instead of going on witch-hunts, it would probably accomplish a whole lot more for the protection of the people of the state of Montana. (Emphasis supplied).”
At its November 12, 1986, meeting the Board of Dentistry, which consists of licensed dentists practicing in Montana, considered the complaint against Mr. Kandarian. The Board of Dentistry concluded that it would request the filing of a complaint against Mr. Kandarian and if the county attorney did not so act, an injunction should be sought for the unlicensed practice of dentistry.
Such a request was made to the county attorney of Flathead County. By his letter dated December 30, 1986, the county attorney demonstrated that he understood the issues and chose not to act, stating:
“I now have had the opportunity to review these materials together with what I perceive to be applicable Montana law. It appears to me that the relevant issue is not whether Mr. Kandarian is engaging in a particular activity (TMJ evaluations), but rather whether that activity (which he does not deny) is prohibited to a denturist by Section 37-29-402(3) and, if so, what the proper remedy would be.
“Although I may question whether such conduct is in fact a violation of that statute, I have little doubt that, regardless, a criminal prosecution is not the proper forum in which to seek a resolution. *453 I therefore respectfully decline to prosecute the complaint. If either the Board of Dentistry or the Board of Denturity feels that Mr. Kandarian’s conduct is actionable, it seems to me that the proper remedy would be an injunctive action brought by the Board pursuant to either Section 37-4-328 or Section [37-29-411], MCA, respectively.” The county attorney therefore recommended that if the Board of Dentistry felt that Mr. Kandarian’s conduct was actionable, the proper remedy would be an injunctive action, which was the procedure followed by the Board.
The holding of the majority indicates that because of the failure to make an investigation and a failure to follow a process which provided safeguards for Mr. Kandarian, there had been a forfeiture of immunity. I do not understand that conclusion.
The issues as between the parties are quite clear — the Board of Dentistry believes that the actions taken by Mr. Kandarian constitute the unlawful practice of dentistry — and Mr. Kandarian, incidentally the Chairman of the Board of Denturity, believes that it is not the unlawful practice of dentistry, but the lawful practice of denturity. A hearing would not have more clearly established the opposing positions of the two parties. Under those circumstances, was it improper for the Board of Dentistry to seek an injunction without a due process hearing?
The specific statutes covering the Board of Dentistry indicate that their procedure was provided under § 37-4-328, MCA, which in pertinent part states as follows:
“(3) If a person, firm, or corporation engages in the practice of dentistry without possessing a valid license or violates this chapter, the attorney general, a county attorney, or the board may maintain an action in the name of this state to enjoin the person, firm or corporation from engaging in the practice of dentistry”
Clearly the Board is given both the responsibility to enforce the statutes with regard to the profession of dentistry and where it deems advisable, to secure an injunction. This is directly comparable to the statutory authority of the Board of Medical Examiners which was involved in the Koppen case. Section 37-3-326, MCA, states in part as follows:
“Notwithstanding any other provision in this chapter, the board [Board of Medical Examiners) may maintain an action to enjoin a person from engaging in the practice of medicine until a license to practice medicine is procured.”
*454 The statutory provisions are directly comparable. There is a statutory procedure for the Board of Dentistry to conduct hearings after various notice and due process rights are considered. Again, these are directly comparable to the provisions for the Board of Medical Examiners. I conclude that for our purposes, the statutory provisions and purposes of the Board of Dentistry and the Board of Medical Examiners are directly comparable. That leads me to review Koppen. In Koppen we stated the following:
“The action or inaction by the Board under attack in this case is its decision not to strip Dr. Kauffman of his license when faced with complaints concerning his professional conduct. The Board’s decision whether to initiate administrative proceedings against a doctor is analogous to a prosecutor’s decision whether to initiate court proceedings against an alleged criminal. We concur with the reasoning in Butz that the Board’s discretion might be distorted if it is not immune from suit for damages arising from such a decision. We hold, therefore, that in the exercise of its quasi-judicial authority, the Board is entitled to the absolute immunity afforded executive officials under the rule in the Butz decision...”
Koppen, 233 Mont. at 219-20, 759 P.2d at 176.
In Koppen this Comb concluded that the inaction of the Board of Medical Examiners in any claimed failure to investigate the activities of a medical doctor were subject to the protection of quasi-judicial immunity. In the present case, the majority has concluded that the action of the Board of Dentistry in commencing an injunction proceeding, one of the options expressly given to that Board by the statutes controlling the Board, somehow causes the Board to lose its immunity. I fail to -understand the rationale. I believe the holding in Koppen is directly on point. In fact we have a much stronger case for quasi-judicial immunity here because the Board in fact was attempting to exercise its obligation to protect the practice of dentistry, whereas the Board in Koppen had failed to do anything with regard to protecting the public from the alleged unprofessional actions of a medical doctor.
The majority further concludes that under Lima School Dist. No. 12 v. Simonsen (1984), 210 Mont. 100, 683 P.2d 471, when the Board sought an injunction, the state does not enjoy immunity. A more complete analysis is required of the Lima case. The Lima School District had filed suit against the defendants to recover money paid under a transportation contract for the transportation of school children. The defendants counterclaimed, alleging damages and were *455 awarded $5,000 on their counterclaim. With regard to the issue of sovereign immunity, the Court stated as follows:
“The School District argues before this Court that the counterclaim is barred by the doctrine of sovereign immunity. This issue was not raised in the pleadings or otherwise at trial. It need not be considered by the Supreme Court. The School District itself initiated this lawsuit. It would be especially inequitable to allow the state to bring an action for payment by mistake and vest them with immunity from suit in related matters. The better rule is to recognize that whenever the state brings an equitable action it waives any applicable sovereignty and opens the door to a defense or counterclaim germane to the matter in controversy. (Citations omitted.)”
Lima, 210 Mont. at 112, 683 P.2d at 477.
The case concludes that the issue of sovereign immunity need not be addressed because it was not raised in the lower court. It is true the issue went on to discuss the aspect of inequitability. I would only point out that this was a proceeding brought for the recovery of monies paid on a contract theory, to which the defendants had counterclaimed. Under that fact situation, it seems entirely appropriate to hold that when the state commenced the action, it could not defend by stating it was immune. I don’t believe that affords any proper authority for the present decision. While this presently is an action for an injunction, it is certainly not comparable to the Lima action.
As a result, I disagree with the conclusion of the majority that when the Board sought an injunction, it put itself in the role of the litigant or advocate rather than adjudicator. The Board only acted in the role assigned to it by the statutes, that being the attempted prohibition of a non-dentist practicing dentistry. I fail to see how such conduct could be classed as a giving up of any quasi-judicial immunity.
I further emphasize that the conclusion in the present case contradicts our holding in Koppen. There we concluded that the Board’s decision whether to initiate administrative proceedings is analogous to a prosecutor’s decision. I find no distinction between that and the Board’s decision in the present case to initiate proceedings requesting an injunction.
In addition, there is the inference that coming to court for injunctive purposes may have denied due process in some manner. I fail to understand such a theory. The purpose of coming to court is to allow *456 the Board of Dentistry and Mr. Kandarian to set forth their opposing views in court with due process protections under court rules.
Based on Koppen, I conclude that the Board of Dentistry should have been granted immunity in this proceeding.
CHIEF JUSTICE TURNAGE concurs in the dissent of JUSTICE WEBER.