JUSTICE TRIEWEILER,
specially concurring in part and dissenting in part:
I concur in part and dissent in part from the opinion of the majority. My reasons are discussed under the headings assigned to the various issues raised by the appellant.
CIVIL RIGHTS ACTION
I concur with the majority’s reversal of the District Court on this issue, but do not feel that it was necessary to make that decision dependent on the Supreme Court decision in Hafer v. Melo (1991), 502 U.S. _, 112 S.Ct. 358, 116 L.Ed.2d 301.
In his complaint, plaintiff sued Andrea H. Bennett individually in her personal capacity, and alleged that she violated his constitutional rights in the manner in which she personally applied provisions of the Montana Insurance Code to him. He specifically alleged that Bennett applied the Montana Insurance Code in such a way as to violate the Privileges and Immunities Clause of the U.S. Constitu *430 tion, Article IV, Section 2, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution. He also alleged that the Commissioner personally acted under color of state law to deprive him of his property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.
The plaintiff’s allegations were not controverted. Bennett moved for summary judgment based purely on her assertion that she was immune from suit. Summary judgment was granted by the District Court based purely on its conclusion that Bennett could not be sued under the Civil Rights Act because of the U.S. Supreme Court’s decision in Will v. Michigan Dept. of State Police (1989), 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45. However, Will did not grant immunity to public officials from suits under 42 U.S.C. § 1983, when the suit is based upon allegations of personal misconduct by that public official. In Will, the plaintiff alleged that he had been denied a promotion within the Michigan Department of State Police for an improper reason. He joined the Director of State Police as a defendant in his official capacity without alleging that the director himself had personally engaged in any culpable conduct. The Will decision stands for the proposition that state officials cannot be sued in their official capacity based simply on respondeat superior because such a suit is not in reality against the official as an individual, but rather against his office.
Where a § 1983 action against a state official is based upon that official’s personal misconduct, he is still personally liable to suit. The difference in liability was explained in Kentucky v. Graham (1985), 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114, in the following language:
Proper application of this principle in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity suits. Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal-and official-capacity actions.
Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 237-238, 40 L.Ed.2d 90, 94 S.Ct. 1683, 71 Ohio Ops.2d 474 (1974). Official-capacity suits, in contrast, “generally represent only another way of pleading an *431 action against an entity of which an officer is an agent.” Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55, 56 L.Ed.2d 611, 98 S.Ct. 2018 [2035, n.55] (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Brandon, [v. Holt] supra, [469 U.S. 464] at 471-472, 83 L.Ed.2d 878, 105 S.Ct. 873 [at 878]. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official’s personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.
Graham, 473 U.S. at 165, 166, 105 S.Ct. at 3104-05, 3105.
Therefore, where it can be shown that a public official acting under color of state law personally caused a deprivation of the claimant’s federal rights, that individual is still personally liable under 42 U.S.C. § 1983. The District Court erred when it held that the personal suit against Bennett was barred by the U.S. Supreme Court’s decision in Will, regardless of the outcome in Hafer.
For these reasons, I concur in the decision to reverse the District Court’s summary judgment in favor of the defendant Bennett which dismissed plaintiff’s claims filed pursuant to 42 U.S.C. § 1983.
QUASI-JUDICIAL IMMUNITY
The issue of whether Bennett’s acts which are complained of were administrative and ministerial, as opposed to quasi-judicial, is an interesting one, and by itself was probably sufficient to preclude summary judgment. However, it seems to me that there is a more important issue involved with the dismissal of potentially meritorious claims based upon judicially created quasi-judicial immunity. Article II, Section 18, of the Montana Constitution, provides as follows:
The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a % vote of each house of the legislature.
To my knowledge, the Montana Legislature has never voted to impose quasi-judicial immunity by a % vote, or by any other vote. Therefore, to judicially create such immunity contravenes an express provision *432 of the Montana Constitution which this Court is sworn to uphold. Our responsibility is to enforce the Constitution, not to undermine it. For that reason, I would reverse this Court’s decisions in Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, and Gerber v. Commissioner of Insurance (1990), 242 Mont. 369, 786 P.2d 1199. I would also reverse the District Court’s decision granting summary judgment to the defendant on the basis of quasi-judicial immunity, and dissent from that portion of the majority opinion which suggests that this doctrine may protect the defendant in some activities, but not others.
SECTION 33-18-203, MCA (1985)
Section 33-18-203, MCA (1985), prohibits an individual from making untrue, deceptive, or misleading advertisements regarding the insurance business. There was absolutely no evidence in this case that plaintiff ever misrepresented anything or mislead anyone.
The District Court determined that plaintiff violated the above section by advertising himself as “Trout Insurance Agency,” when he in fact was only licensed individually. However, all of the evidence was to the contrary.
Copies of his letterhead, his telephone book listing, and his yellow pages advertisement were introduced into evidence at the administrative hearing. Nowhere on any of these documents does the word “agenc/’ appear.
Plaintiff’s letterhead refers to “Trout Insurance.” His telephone listings in the Billings telephone books refer to “Trout Insurance” and “Trout, Jim Insurance.” His advertisement in the yellow pages lists him as “Trout Insurance.” There was no evidence offered by the Insurance Commissioner that plaintiff ever held himself out as being associated with an agency.
Ignoring the record and ignoring the fact that plaintiff was never charged by the Insurance Commissioner with advertising as “Trout Insurance Agency,” this Court concludes that an error in plaintiff’s amended complaint constitutes “substantial evidence” to support the findings of the District Court.
Allegations in complaints are not evidence, and the majoritys opinion cites no evidence in support of the District Court’s conclusion that plaintiff violated § 33-18-203, MCA(1985). The fact that a person could be convicted of a statute as broad as this statute without notice of the basis for the charges, and with absolutely no evidence offered to support the charges, is a frightening development. I would reverse *433 the District Court’s conclusion that plaintiff violated that section, and dissent from the majority opinion which affirms that conclusion.
SECTION 33-17-201(4), MCA (1985)
The second statute that plaintiff was accused of violating prevents agents from placing business with an insurer with whom he does not hold an appointment. It does not specify the nature of the appointment that is required. In this case, plaintiff did hold an appointment with John Alden Life Insurance Company in California at the time that he wrote the policy which formed the basis of the charges against him.
It would have been reasonable for plaintiff to conclude that pursuant to Montana’s reciprocity agreement with California it was permissible for him to write the policy in question. Section 33-17-403, MCA (1985) provides:
An applicant for a nonresident license must be licensed in the state of his residence to act as agent for the kinds of insurance for which he applies for licensing in the state of Montana. The nonresident agent shall be licensed to represent only those insurers which he is licensed to represent in the state of his residence and which are licensed in the state of Montana. The insurance supervisory official of the applicant’s state of residence must certify that the applicant is licensed and to the extent of the license.
If plaintiff’s conduct in this case constituted a violation of the law, it seems to me that fundamental principles of fairness and prior case law require that he is at least entitled to advance notice as to what the law commands and forbids. Papachristou v. City of Jacksonville (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110. In this case, the statutes that plaintiff was found to have violated are totally deficient in that respect.
Section 33-17-201(4), MCA (1985), also provides for an exception which was not mentioned in the majority opinion. The statute makes its requirements applicable “except as provided in ... § 33-17-1104 as to life or disability insurance agents.” Plaintiff was in fact licensed as a “life and/or disability insurance agent.”
Section 33-17-1104, MCA (1985), provides that:
A life or disability insurance agent may from time to time place excess or rejected risks in any other life or disability insurer authorized to transact insurance in this state, with the knowledge and approval of the insurer or insurers as to which the agent is so *434 licensed, and may receive a commission thereon without being required to have a license as to such other insurer.
There is a factual issue regarding whether the policy that plaintiff actually wrote for John Alden prior to his appointment in Montana was an excess or rejected risk. That issue was never addressed by the District Court. However, if we assume that the group for whom the policy was issued fits into either of those categories, plaintiff did not violate the insurance code when he placed the Computer Land account with John Alden.
For these reasons, I do not believe there is substantial evidence to support the District Court’s finding that plaintiff violated § 33-17-201(4), MCA (1985). I dissent from the majority opinion which concludes that there was, and would reverse the District Court on this issue.
JUSTICE HUNT concurs in the foregoing concurrence and dissent of JUSTICE TRIEWEILER.