No. 90-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JAMES H. TROUT,

Plaintiff and Appellant.

v.

ANDREA BENNETT, as an individual and as
State Auditor and Ex Officio Commissioner
of Insurance; THE STATE OF MONTANA; THE
JOHN ALDEN LIFE INSURANCE CO.; and THE
PHOENIX MUTUAL INSURANCE CO.,

Defendants and Respondents.

FILED

APR 9 - 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                James P. Reynolds, Reynolds, Motl, Sherwood
                and Wright, Helena, Montana

        For Respondents:

                Michael J. Mulroney, Luxan & Murfitt, Helena,
                Montana; Richard E. Gillespie, Keller, Reynolds,
                Drake, Sternhagen & Johnson, Helena, Montana;
                Stephen M. Frankino, Hughes, Kellner,
                Sullivan & Alke, Helena, Montana

                               Submitted on Briefs:   March 22, 1991

                                        Decided:   April 9, 1992

Filed:

                                        Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

James H. Trout (Trout), appeals the adverse judgment in his action as a licensed non-resident life insurance agent against Andrea Bennett, individually and as Commissioner of Insurance. The District Court for the First Judicial District, Lewis and Clark County, bifurcated the action into two parts. In the first portion the District Court held that Trout violated certain statutes, and fined him $250 for placing business with an insurance carrier before he had an appointment, and also fined him $250 for advertising himself as an agency. In the second portion, the District Court entered summary judgment for defendant Bennett, individually and as Commissioner. The District Court concluded that Andrea Bennett was not a "person" under 42 U.S.C. § 1983, and also concluded that Andrea Bennett was quasi-judicially immune. Trout appeals. We affirm in part and reverse in part.

The issues before the Court are:

1. Did Trout violate § 33-17-201(4), MCA (1985)?

2. Did Trout violate § 33-18-203, MCA?

3. Is Andrea Bennett, individually and as Commissioner, immune from § 1983 claims?

4. Does the doctrine of quasi-judicial immunity render Andrea Bennett, individually and as Commissioner, immune from suit under state law as to the remaining claims?

5. Did the District Court err in failing to rule on Trout's motion to file a second amended complaint?

Trout is a California resident licensed as an insurance agent

2

in the State of California. He started his business in Montana in 1983. A non-resident life insurance agent's license was issued to him by the Montana Department of Insurance (Department). The license listed a California address and authorized Trout to sell life and disability insurance in Montana as a non-resident insurer. The license further provided that he could not "solicit business nor accept premiums under the name of [his] employing agency, or in conjunction with, or under the name of any other organization."

Two events sparked the investigation of Trout. First, the Department received a phone inquiry as to whether Trout was licensed to do business in Montana as "Trout Insurance" and received a letter complaining about Trout's activities. Second, the Department received a letter from Trout himself containing the letterhead "Trout Insurance", listing his Billings business address.

The Department investigator proceeded on the assumption that Trout, a licensed non-resident agent, was not permitted to maintain a Billings office and sell insurance in Montana, and that the stationery and telephone book ads indicated he was holding himself out to the public as a resident insurer. Trout filed the assumed business name of "Trout Insurance Agency" with the Secretary of State, under § 30-13-203, MCA. The Department investigator informed Trout he could not operate an office or do any business as Trout Insurance because he was not licensed as such.

After completion of the investigation, filing of a complaint by the Department, giving of notice of hearing, and hearing before

a hearing examiner at which both Trout and the Department were represented in person and by counsel, the hearing examiner made proposed findings of fact, conclusions of law and order dated May 28, 1986. The Commissioner reviewed the same and in turn made extensive findings of fact, conclusions of law and order dated July 16, 1986. The Commissioner concluded that Trout had violated the statutes in a number of respects and by order revoked his non-resident license for twelve months and also ordered that he pay an administrative fine of $2,500 to the office of the Commissioner.

Trout then commenced the present action in which he alleged that Andrea Bennett individually and as Commissioner had violated various of his constitutional rights and caused damages to him. He sought a reversal of the Commissioner's order of July 16, 1986, with regard to the statutory violations and fine, and also requested a reversal of his license suspension. By the same complaint Trout claimed damages on various theories under 42 U.S.C. § 1983, and also a denial of constitutional rights by reason of the requirement of taking down a sign and ceasing the selling of insurance in Montana, as well as other constitutional tort theories. The District Court entered an order bifurcating the causes of action covered by the complaint.

As the first part of the bifurcation, the District Court considered the appeal from the order of the Commissioner. The District Court considered the matter under § 33-1-711(4), MCA, which provides that upon receipt of the transcript and evidence, the District Court shall hear the matter and following hearing,

that the District Court is to consider the evidence contained in the transcript, exhibits and documents together with such other additional evidence as may be offered by either party. Proceeding under that authority, the District Court reconsidered the evidence and made new findings of fact and conclusions of law. The District Court reversed the determination of the Commissioner in a number of respects which are not involved in this appeal. By its orders dated August 25, 1989, and January 31, 1990, the District Court concluded that Trout had violated § 33-17-201(4), MCA (1985), by placing business with John Alden Life Insurance Company before he held an appointment issued by the Commissioner, and fined Trout $250 for the offense; and also concluded that Trout violated § 33-18-203, MCA, by advertising himself as "Trout Insurance Agency" and fined Trout $250 for that violation. The District Court specifically reversed the Commissioner with regard to the suspension of his license and allowed Trout to continue to sell insurance without interruption, and also reversed the $2500 fine.

As the second step in the bifurcation process, on May 30, 1990, the District Court ruled on the motion for summary judgment made by Andrea Bennett, individually and as Commissioner. The District Court first concluded that the Commissioner was not a "person" under 42 U.S.C. § 1983, and granted summary judgment in the Commissioner's favor on § 1983 claims. The District Court concluded that Will v. Michigan Dept. of State Police (1989), 491 U.S. 58, was controlling. The District Court stated:

> Will v. Michigan Dept. of State Police, 491 U.S. ___, 109 S.Ct. ___, 105 L.Ed.45 (1989), decided after

5

Trout filed his amended complaint, disposes of this issue. 42 U.S.C., Section 1983, the provision under which Trout seeks monetary damages, provides that any "person" acting under color of state law, who violates another's constitutional rights is liable to the injured party. Will affirmed a Michigan Supreme Court decision which held that neither a state nor a state official acting in his or her official capacity is a "person" under 42 U.S.C., Section 1983. Id. at ___, 109 S.Ct. at ___, 105 L.Ed. at 58.

. . . Clearly Will holds that "a [section 1983] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will concluded that neither the states nor state officials are "persons" subject to suit under Section 1983. Although Trout alleges in his amended complaint that certain statutes are unconstitutional, the constitutional counts in the amended complaint rely exclusively on 42 U.S.C., Section 1983 for relief, and do not request declaratory or injunctive relief. Summary judgment, dismissing both [Andrea Bennett] personally and the Office of State Auditor and Ex Officio Commissioner of Insurance on the counts alleging constitutional violations, is therefore proper.

The District Court cited Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, and concluded that the Commissioner was quasi-judicially immune from suit on the remaining counts and granted the Commissioner's motion for summary judgment on those counts. As a result, the District Court dismissed the Commissioner individually and as State Auditor and Ex Officio Commissioner of Insurance, with prejudice.

Trout brings this appeal from both parts of the bifurcated proceeding.

I

Did Trout violate § 33-17-201(4), MCA (1985)?

Section 33-17-201(4), MCA (1985) provided:

No agent shall place any business, other than coverage of

6

his own risks, with any insurer as to which he does not then hold an appointment or license as agent under this chapter. . . .

Trout was fined $250 for violating § 33-17-201(4), MCA (1985), by placing business with John Alden Life Insurance Company before he held an appointment to do so issued by the Commissioner. The District Court found that Trout requested John Alden Life Insurance Company to appoint him as a non-resident agent in Montana. The District Court found that Trout solicited insurance business prior to receiving a validated appointment from that company as was required by the Commissioner. The record contains substantial evidence to support that finding.

We affirm the conclusion of the District Court in holding that Trout did violate § 33-17-201(4), MCA (1985).

II

Did Trout violate § 33-18-203, MCA?

Section 33-18-203, MCA, provides:

**No person shall** make, publish, disseminate, circulate, or **place before the public**, or cause, **directly or indirectly**, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine, or other publication or in the form of a notice, circular, pamphlet, letter, or poster or over any radio or television station or in any other way, an advertisement, announcement, or **statement containing any assertion, representation, or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive, or misleading.** (Emphasis added).

Trout maintains that he never advertised as an "agency." He contends that his Billings phone book listings as "Trout Jim Insurance" and "Trout Insurance" did not represent an agency. As the Commissioner pointed out, and as found by the District Court,

7

Trout alleged the following in his Amended Complaint:

> 12. Trout registered an assumed name, "Trout Insurance Agency," with the Montana Secretary of State on January 21, 1985. Thereafter <u>he ordered and used stationery</u> with the name Trout Insurance Agency and the address of his Billings office for correspondence relating to his insurance sales in Montana. . . . (Emphasis added).

The District Court further concluded that Trout had signed a restriction letter which indicated that the license was issued to him as an individual, but that Trout had represented himself as an agent. We conclude there is substantial evidence to support the findings of the District Court. We affirm the holding that Trout violated § 33-18-203, MCA.

## III

Is Andrea Bennett, individually and as Commissioner, immune from § 1983 claims?

Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Trout points to the reliance of the District Court on the <u>Will</u> case, as above described, and argues that <u>Will</u> applies only to those claims against Andrea Bennett in her "official capacity." He further argues that <u>Will</u> provides no protection for claims against her in her "personal capacity." Trout concedes that under <u>Will</u>, Andrea Bennett is immune in her official capacity from the § 1983 claims against her. Trout's argument is further emphasized in his

8

special brief regarding the case of Hafer v. Melo (1991), 112 S.Ct. 358, which was decided on November 5, 1991.

Andrea Bennett contends that she was acting within the scope of her official duties and employment. She maintains that under Will, neither a state nor a state official acting in his or her official capacity is a "person" under § 1983. Andrea Bennett further contends that Hafer has no bearing on the outcome of this case. We disagree.

Because Hafer is dispositive of this issue, we will discuss it at some length. Hafer sought election as Auditor General of Pennsylvania. During the campaign she was given a list of names of persons who allegedly secured their jobs in the Auditor General's office through payments to former employees. Shortly after becoming Auditor General she dismissed eighteen employees. Eight of those employees sued Hafer in Federal District Court asserting a claim under 42 U.S.C. § 1983. Other respondents also sought damages because they alleged they had been discharged because of their political affiliation and support for Hafer's opponent. The United States Supreme Court granted certiorari "to address the question whether state officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities." The United States Supreme Court discussed at some length the comparison between official capacity suits and personal capacity suits. The court pointed out that personal capacity suits seek to impose individual liability for actions under color of state law, and as a result it is sufficient to establish personal

9

liability under § 1983 by showing that an official acted under color of state law and caused deprivation of a federal right. The court pointed out how this is specifically covered by the above quoted definition from § 1983.

In discussing the distinction further, the Supreme Court pointed out that state officials sued in their official capacities are not persons for purposes of suit because they assume the identity of the government which employs them. By contrast, officers sued in their personal capacity come to court as individuals, so that a government official in the role of a personal capacity defendant fits comfortably within the above statutory term "person." At this point the court pointed out that Hafer attempted to argue that the distinction turned upon the capacity in which the state official was acting when the plaintiff was injured. The court refused to accept this theory, pointing out that the requirement of action under state law means that Hafer may be liable for discharging respondents <u>precisely</u> because of her authority as Auditor General. Hafer also argued there was a distinction as to acts taken under color of state law, claiming that such actions were immune. Again the court found no support in the broad language of § 1983.

The court emphasized that it has in the past refused to extend absolute immunity beyond a very limited class of officials, including the President, legislators carrying out their legislative functions, and judges carrying out their judicial functions, "whose special functions or constitutional status requires complete

10

protection from suit." <u>Hafer</u>, 112 S.Ct. at 364. In support of that conclusion, the Supreme Court stated:

> State executive officials are not entitled to absolute immunity for their official actions. <u>Scheuer v. Rhodes</u>, supra.

<u>Id</u>. at 364. Hafer further contended that under <u>Will</u>, there should not be recovery because the Eleventh Amendment bars suits in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury. In discussing this issue, the Supreme Court stated:

> "[S]ince <u>Ex parte Young</u>, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908)," we said "It has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." . . . While the doctrine of <u>Ex parte Young</u> does not apply where a plaintiff seeks damages from public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." . . . That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983.

<u>Hafer</u>, 112 S.Ct. at 364.

After such an extensive discussion, the Court unanimously held:

> We hold that state officials, sued in their individual capacities are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.

<u>Hafer</u> 112 S.Ct. at 365.

In connection with the holding in <u>Hafer</u>, we point out that the amended complaint in the present case named Andrea H. Bennett, as an individual and as State Auditor and Ex Officio Commissioner of

11

Insurance in the title, and also alleged the following in the complaint:

> This action is brought against this Defendant in her official and personal capacities.

We conclude that under Hafer, which had not been decided at the time of the summary judgment by the District Court, the District Court's interpretation of Will as holding that neither states nor state officials are "persons" subject to suit under § 1983, must be reversed. We hold that under the United States Supreme Court decision in Hafer, Andrea Bennett, State Auditor and Commissioner of Insurance of Montana was sued by Trout in her individual capacity and as a result can be classified as a "person" within the meaning of § 1983, and that as such a state officer, Andrea Bennett is not absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of her acts. We reverse the District Court on this issue and remand for further proceedings consistent with this opinion.

IV

Does the doctrine of quasi-judicial immunity render Andrea Bennett, individually and as Commissioner, immune from suit under state law as to the remaining claims?

Trout concedes that the doctrine of quasi-judicial immunity protects the Commissioner from her actions in filing charges against him, the holding of the administrative hearing, and the ultimate decision finding him to have violated various code provisions. However, he argues that a distinction must be made between these quasi-judicial functions, and the actions in behalf

12

of the Commissioner prior to the filing of the administrative charges. In particular, he urges that the actions of the Commissioner through her agent, Dan McGowan, in ordering him to remove his sign from his Billings office and requiring that he cease the sale of insurance in Montana under his non-resident license, clearly violated his constitutional rights to due process, equal protection, freedom to travel and free speech. While Trout might agree that the investigation made in order to provide a basis for the filing of charges was quasi-judicial in nature, he contends a distinction must be made with regard to the actions which essentially forced him out of business. He argues that this issue involves questions of fact which preclude summary judgment on the issue.

In State v. District Court (1990), 246 Mont. 225, 805 P.2d 1272, this Court addressed the issue of whether the State and the Division of Workers' Compensation are protected by quasi-judicial immunity for their admitted negligence in renewing the privilege of an employer to self-insure under the Workers' Compensation Law. This Court held that the nature of the functions performed were central to the determination of the issue, and stated:

> For immunity to apply the function of the Division must be quasi-judicial rather than administrative or ministerial.

State v. District Court, 805 P.2d at 1274. Furthermore, the Court provided the following definitions:

> Quasi-judicial functions are those which lie midway between the judicial and ministerial ones. The lines separating them from such . . . are necessarily indistinct; but, in general terms, when the law, in words

13

or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial.

\* \* \*

In the same line, a ministerial act has also been defined as an act performed in a prescribed legal manner, in obedience to the law or the mandate of legal authority, without regard to, or the exercise of, the judgment of the individual upon the propriety of the acts being done.

Id. at 1275. In distinguishing State v. District Court from Koppen

v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173,

we looked at the definition of quasi-judicial function found in §

2-15-102(10), MCA:

> "Quasi-judicial function" means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. . . .

The Court stated:

> The case before us is distinguishable from Koppen. In Koppen, the Board allegedly failed to respond to complaints, adversarial in nature, that it received regarding a physician's fitness to practice medicine and to take remedial action. We noted that the action or inaction by the Board in Koppen was **its decision** not to revoke or limit the physician's license or initiate such action **when faced with complaints concerning his professional conduct.** There was no allegation that the Board failed to even consider the complaints.
> Here, we first note that there is no controversy from the outset as in Koppen. The facts merely involve the filing of an application rather than an adversarial setting involving a dispute or controversy. We conclude that immunity does not attach because the Division is not expressly designated a quasi-judicial board, see § 2-15-124, MCA, see generally Title 2, Chapter 15, MCA, nor was it performing a quasi-judicial function . . . (Citations Omitted). (Emphasis in original.)

Id. at 1275.

In pertinent part § 2-15-102(10), MCA, provides:

14

(10) "Quasi-judicial function" means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes but is not limited to the functions of interpreting, applying, and enforcing existing rules and laws granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits, and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; adopting procedural rules; holding hearings; and any other act necessary to the performance of a quasi-judicial function.

On the question of whether or not an investigation by the Commissioner's office should be classed as quasi-judicial in nature, the case of Gerber v. Commissioner of Ins. (1990), 242 Mont. 369, 786 P.2d 1199, is controlling:

As a discretionary function, the Insurance Commissioner's conduct of an investigation based on a consumer's complaint against an insurer is protected by quasi-judicial immunity.

As a result, the investigation of Trout clearly is protected by quasi-judicial immunity.

The narrow issue which concerns us does not involve the investigation itself. The issue is whether the agent of the Commissioner properly required Trout to remove his sign and stop the sale of insurance. Our review of the 1985 sections of Montana Code Annotated which applied to these particular actions does not disclose any statutory provision granting authority to the Commissioner or any agent of the Commissioner to require an agent or insurance producer to take down a sign in the manner alleged by Trout, or requiring an agent or producer to close down his office so far as the sale of insurance is concerned, as again is alleged

15

by Trout. The record before us on this aspect is both confusing and incomplete so that we are not able to determine the specific actions which were alleged to have occurred on the part of Dan McGowan in behalf of the Commissioner.

We therefore conclude there is a remaining issue of material fact which precludes summary judgment with regard to the alleged conduct of the required taking down of the Trout sign and the closing of Trout Insurance. We conclude it is appropriate to reverse the District Court on this narrow specific issue.

In addition Trout claims that he suffered damages by reason of the notification of various insurance companies of his suspension in derogation of the automatic stay provision under § 33-1-711(2), MCA, which in 1985 read:

> (2) Upon filing of the notice of appeal therein, the court shall have full jurisdiction and shall determine whether such filing shall operate as a stay of the order or action appealed from, except that in the following instances the filing of the notice of appeal shall _automatically_ stay the order appealed from pending the judgment of the district court on the appeal:
> (a) _appeal from suspension_ or _revocation of the license_ of an agent, solicitor, or surplus line agent; (Emphasis added.)

Again the record is inadequate for us to determine the precise steps which were taken. Again it appears there is an issue of material fact which precluded summary judgment on this narrow aspect as well.

We therefore hold that summary judgment is reversed with regard to the claim of quasi-judicial immunity as to the alleged removal of the sign, closing of the insurance business, and alleged improper notification of insurance companies in light of the

16

automatic stay provided for in § 33-1-711(2), MCA (1985). We remand on these specific issues for further proceedings by the District Court consistent with this opinion.

V

Did the District Court err in failing to rule on Trout's motion to file a second amended complaint?

Rule 15(a), M.R.Civ.P., provides that after a responsive pleading has been served, a party may amend his pleading only by leave of court or by written consent of the adverse party, and that "leave shall be freely given when justice so requires." Trout filed his motion to amend his complaint after summary judgment was entered against him. However, we note that he failed to provide any basis for such an amendment. Instead, his motion consisted of a one sentence request to amend without any explanation of why he wished to do so. We conclude that there was no abuse of discretion on the part of the District Court in denying Trout's motion to amend and hold that such a denial was proper.

We affirm the District Court on Issues I, II, and V. We reverse the District Court on Issue III regarding the § 1983 claims, and on the specified narrow issues under Issue IV, and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

17

John Conway Harrison

Karla M. Gray

R. C. McDonough

_____
Justices

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur in part and dissent in part from the opinion of the majority. My reasons are discussed under the headings assigned to the various issues raised by the appellant.

## CIVIL RIGHTS ACTION

I concur with the majority's reversal of the District Court on this issue, but do not feel that it was necessary to make that decision dependent on the Supreme Court decision in *Hafer v. Melo* (1991), 502 U.S. ___, 112 S.Ct. 358, 116 L.Ed.2d 301.

In his complaint, plaintiff sued Andrea H. Bennett individually in her personal capacity, and alleged that she violated his constitutional rights in the manner in which she personally applied provisions of the Montana Insurance Code to him. He specifically alleged that Bennett applied the Montana Insurance Code in such a way as to violate the Privileges and Immunities Clause of the U.S. Constitution, Article IV, Section 2, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution. He also alleged that the Commissioner personally acted under color of state law to deprive him of his property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

The plaintiff's allegations were not controverted. Bennett moved for summary judgment based purely on her assertion that she

19

was immune from suit. Summary judgment was granted by the District Court based purely on its conclusion that Bennett could not be sued under the Civil Rights Act because of the U.S. Supreme Court's decision in *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45. However, *Will* did not grant immunity to public officials from suits under 42 U.S.C. § 1983, when the suit is based upon allegations of personal misconduct by that public official. In *Will*, the plaintiff alleged that he had been denied a promotion within the Michigan Department of State Police for an improper reason. He joined the Director of State Police as a defendant in his official capacity without alleging that the director himself had personally engaged in any culpable conduct. The *Will* decision stands for the proposition that state officials cannot be sued in their official capacity based simply on *respondeat superior* because such a suit is not in reality against the official as an individual, but rather against his office.

Where a § 1983 action against a state official is based upon that official's personal misconduct, he is still personally liable to suit. The difference in liability was explained in *Kentucky v. Graham* (1985), 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114, in the following language:

> Proper application of this principle in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity suits. Because this distinction apparently continues to

confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal-and official-capacity actions.

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e.g., *Scheuer v. Rhodes*, 416 U.S. 232, 237-238, 40 L.Ed.2d 90, 94 S.Ct. 1683, 71 Ohio Ops.2d 474 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon*, *supra*, at 471-472, 83 L.Ed.2d 878, 105 S.Ct. 873. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Graham*, 473 U.S. at 165, 166.

Therefore, where it can be shown that a public official acting under color of state law personally caused a deprivation of the claimant's federal rights, that individual is still personally liable under 42 U.S.C. § 1983. The District Court erred when it held that the personal suit against Bennett was barred by the U.S. Supreme Court's decision in *Will*, regardless of the outcome in *Hafer*.

For these reasons, I concur in the decision to reverse the District Court's summary judgment in favor of the defendant Bennett which dismissed plaintiff's claims filed pursuant to 42 U.S.C. § 1983.

21

## QUASI-JUDICIAL IMMUNITY

The issue of whether Bennett's acts which are complained of were administrative and ministerial, as opposed to quasi-judicial, is an interesting one, and by itself was probably sufficient to preclude summary judgment. However, it seems to me that there is a more important issue involved with the dismissal of potentially meritorious claims based upon judicially created quasi-judicial immunity. Article II, Section 18, of the Montana Constitution, provides as follows:

> The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

To my knowledge, the Montana Legislature has never voted to impose quasi-judicial immunity by a 2/3 vote, or by any other vote. Therefore, to judicially create such immunity contravenes an express provision of the Montana Constitution which this Court is sworn to uphold. Our responsibility is to enforce the Constitution, not to undermine it. For that reason, I would reverse this Court's decisions in *Koppen v. Board of Medical Examiners* (1988), 233 Mont. 214, 759 P.2d 173, and *Gerber v. Commissioner of Insurance* (1990), 242 Mont. 369, 786 P.2d 1199. I would also reverse the District Court's decision granting summary judgment to the defendant on the basis of quasi-judicial immunity, and dissent from that portion of the majority opinion which suggests that this

doctrine may protect the defendant in some activities, but not others.

### SECTION 33-18-203, MCA (1985)

Section 33-18-203, MCA (1985), prohibits an individual from making untrue, deceptive, or misleading advertisements regarding the insurance business. There was absolutely no evidence in this case that plaintiff ever misrepresented anything or mislead anyone.

The District Court determined that plaintiff violated the above section by advertising himself as "Trout Insurance Agency," when he in fact was only licensed individually. However, all of the evidence was to the contrary.

Copies of his letterhead, his telephone book listing, and his yellow pages advertisement were introduced into evidence at the administrative hearing. Nowhere on any of these documents does the word "agency" appear.

Plaintiff's letterhead refers to "Trout Insurance." His telephone listings in the Billings telephone books refer to "Trout Insurance" and "Trout, Jim Insurance." His advertisement in the yellow pages lists him as "Trout Insurance." There was no evidence offered by the Insurance Commissioner that plaintiff ever held himself out as being associated with an agency.

Ignoring the record and ignoring the fact that plaintiff was never charged by the Insurance Commissioner with advertising as "Trout Insurance Agency," this Court concludes that an error in

23

plaintiff's amended complaint constitutes "substantial evidence" to support the findings of the District Court.

Allegations in complaints are not evidence, and the majority's opinion cites no evidence in support of the District Court's conclusion that plaintiff violated § 33-18-203, MCA (1985). The fact that a person could be convicted of a statute as broad as this statute without notice of the basis for the charges, and with absolutely no evidence offered to support the charges, is a frightening development. I would reverse the District Court's conclusion that plaintiff violated that section, and dissent from the majority opinion which affirms that conclusion.

### SECTION 33-17-201(4), MCA (1985)

The second statute that plaintiff was accused of violating prevents agents from placing business with an insurer with whom he does not hold an appointment. It does not specify the nature of the appointment that is required. In this case, plaintiff did hold an appointment with John Alden Life Insurance Company in California at the time that he wrote the policy which formed the basis of the charges against him.

It would have been reasonable for plaintiff to conclude that pursuant to Montana's reciprocity agreement with California it was permissible for him to write the policy in question. Section 33-17-403, MCA (1985) provides:

> An applicant for a nonresident license must be licensed in the state of his residence to act as agent for the kinds of insurance for which he applies for licensing in

24

the state of Montana. The nonresident agent shall be licensed to represent only those insurers which he is licensed to represent in the state of his residence and which are licensed in the state of Montana. The insurance supervisory official of the applicant's state of residence must certify that the applicant is licensed and to the extent of the license.

If plaintiff's conduct in this case constituted a violation of the law, it seems to me that fundamental principles of fairness and prior case law require that he is at least entitled to advance notice as to what the law commands and forbids. *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110. In this case, the statutes that plaintiff was found to have violated are totally deficient in that respect.

Section 33-17-201(4), MCA (1985), also provides for an exception which was not mentioned in the majority opinion. The statute makes its requirements applicable "except as provided in . . . § 33-17-1104 as to life or disability insurance agents." Plaintiff was in fact licensed as a "life and/or disability insurance agent."

Section 33-17-1104, MCA (1985), provides that:

A life or disability insurance agent may from time to time place excess or rejected risks in any other life or disability insurer authorized to transact insurance in this state, with the knowledge and approval of the insurer or insurers as to which the agent is so licensed, and may receive a commission thereon without being required to have a license as to such other insurer.

There is a factual issue regarding whether the policy that plaintiff actually wrote for John Alden prior to his appointment in

Montana was an excess or rejected risk. That issue was never addressed by the District Court. However, if we assume that the group for whom the policy was issued fits into either of those categories, plaintiff did not violate the insurance code when he placed the Computer Land account with John Alden.

For these reasons, I do not believe there is substantial evidence to support the District Court's finding that plaintiff violated § 33-17-201(4), MCA (1985). I dissent from the majority opinion which concludes that there was, and would reverse the District Court on this issue.

_____
Justice

I concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice